Paul S. White (SBN 146989)
    Email: Paul.White@wilsonelser.com
Shannon L. Santos (SBN 260112)
    Email: Shannon.Santos@wilsonelser.com
**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP**
555 South Flower Street, Suite 2900
Los Angeles, CA 90071-2407
Telephone: (213) 443-5100
Facsimile: (213) 443-5101

*Attorneys for Plaintiff Great American Insurance Company*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>SIMPSON MANUFACTURING COMPANY, INC.; SIMPSON STRONG-TIE COMPANY INC.; KAREN COLONIAS,<br><br>Defendants. | Case No. 3:22-cv-06152<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff Great American Insurance Company ("Great American") hereby makes its Complaint for Declaratory Relief against Defendants Simpson Manufacturing Company, Inc. ("Simpson"), Simpson Strong-Tie Company, Inc. ("Strong-Tie"), and Karen Colonias ("Colonias") (collectively the "INSUREDS") and alleges as follows:

## I. INTRODUCTION

1. This Complaint involves an insurance coverage dispute. Great American issued a "claims-made" Public Solution Insurance Policy (the "Policy") to Simpson.

2. On or about October 3, 2021, Terrence Hammons ("Hammons"), the former Senior Vice President and General Counsel of Simpson, sent an email to Simpson demanding a "severance" from Simpson for alleged "disparate, illegal and unfair treatment" and race

discrimination (the "Hammons Demand Letter").  Over the next ten (10) months, Simpson and Hammons exchanged numerous correspondence but were unable to agree on the amount of "severance" to be paid by Simpson to Hammons.

3. On or about August 2, 2022, Hammons filed a lawsuit against the INSUREDS in which Hammons alleged race discrimination and retaliation in the action entitled *Hammons v. Simpson Manufacturing Company, Inc.*, Alameda County Superior Court, Case No. 22CV015473 (the "Underlying Lawsuit").  Specifically, the Underlying Lawsuit brought eight causes of action:

| | | |
|---|---|---|
| Count I: | "Violation of California Labor Code § 1197.5," against Simpson, Strong-Tie, and Colonias; |
| Count II: | "Race Discrimination-Disparate Impact (Gov. Code § 12940(a)," against Simpson and Strong-Tie; |
| Count III: | "Race Discrimination-Disparate Treatment (Gov. Code § 12940(a)," against Simpson and Strong-Tie; |
| Count IV: | "Retaliation (Gov. Code § 12940(h)," against Simpson and Strong-Tie; |
| Count V: | "Failure to Prevent Discrimination and Retaliation (Gov. Code 12940(k))," against Simpson and Strong-Tie; |
| Count VI: | "Adverse Employment Action in Violation of Public Policy," against Simpson and Strong-Tie; |
| Count VII: | "Defamation," against Simpson and Strong-Tie; and |
| Count VIII: | "Invasion of Privacy," against Simpson and Strong-Tie. |

4. Four weeks after Hammons filed the Underlying Lawsuit, Simpson agreed to settle the Underlying Lawsuit for a payment in excess of the jurisdictional limit (the "Settlement").

5. Simpson also incurred in excess of the jurisdictional limit in (i) legal expenses from a law firm related to the Hammons Demand Letter and the Underlying Lawsuit; and (ii) legal expenses from a separate law firm, which performed an investigation of the Hammons Demand Letter, for which Great American never provided its written consent as required by the Policy.

6. The Policy purchased by Simpson from Great American expressly does *not* provide coverage to Simpson and Strong-Tie for their direct liabilities for an "**Employment**

**Practices Claim**,"[1] and the Hammons Demand Letter and Underlying Lawsuit each constitute an "**Employment Practices Claim**."  Indeed, in a letter dated October 14, 2021, when Simpson provided its first "**NOTICE OF CLAIM**" to Great American and enclosed a copy of the Hammons Demand Letter, Simpson stated: "[t]he claims alleged by Mr. Hammonds constitute Employment Practices Claims as defined in the Policy."

7. Subject to its terms, conditions, exclusions, and endorsements, although the Policy provides coverage to an "**Insured Person**" (*e.g.*, Colonias) for an "**Employment Practices Claim**," there is no viable, covered claim brought against Colonias in the Underlying Lawsuit. Of the eight causes of action in the Underlying Lawsuit, seven are only against Simpson and Strong-Tie – which are <u>not</u> afforded coverage as an "**Employment Practices Claim**" – and the only cause of action that names an **Insured Person** (Colonias) as a Defendant (alleged violation of California Labor Code § 1197.5 ("CLC 1197.5")) also names Hammons' "employer" Simpson and/or Strong-Tie as Defendants.  Under California law, only the "employer" can be liable under CLC 1197.5, and individuals like Colonias cannot have liability under CLC 1197.5.  Accordingly, the Underlying Lawsuit contained seven causes of action that are "uncovered" by the Policy, and, as to the lone cause of action naming an **Insured Person**, legally the **Insured Person** could <u>not</u> be statutorily liable as liability is limited to the "employer" (*i.e.*, Simpson and/or Strong-Tie).

8. Correspondingly, the Hammons Demand Letter, which directly gives rise to the Underlying Lawsuit and is founded on the allegations of disparate treatment and race discrimination against Hammons, also contains "uncovered matters" under the Policy.

9. The Policy contains an express "Allocation Provision" for "uncovered matters." Specifically, the Policy provides for a "**Claim**" (*i.e.*, an "**Employment Practices Claim**") that "includes both covered and uncovered matters," that the Policy mandates that there "*must be* an allocation between insured and uninsured **Loss**."

10. Great American seeks a judicial declaration that, after consideration of the various terms, conditions, exclusions, and/or endorsements of the Policy, including the Allocation

---

[1] The use of bolded terms herein tracks the defined and bolded terms in the Policy.

Provision (and a proper allocation is applied to the Settlement and the legal expenses), as well as the application of the Policy's $1 million Retention, Great American is not liable under the Policy to reimburse any portion of the Settlement and legal expenses.

11. In addition to the Allocation Provision and the Policy's $1 million Retention, there are other terms, conditions, exclusions, and/or endorsements of the Policy that provide additional coverage issues related to the Underlying Lawsuit and/or legal expenses, including the following issues: (i) pre-notice legal expenses are not covered; (ii) Great American's prior written consent was not obtained before Simpson made two "offers to settle"; (iii) Great American did not provide its prior written consent to certain portions of the legal expenses; (iv) Simpson had its own independent legal obligation to investigation Hammons' allegations, such that the legal expenses incurred are not covered; (v) the legal expenses were not "reasonable and necessary"; and (vi) timely notice of the Hammons Demand Letter was not provided.

12. An actual controversy exists between the INSUREDS and Great American regarding Great American's purported obligation to provide the INSUREDS with insurance coverage for the Underlying Lawsuit. This controversy cannot be resolved without a declaration of the rights and responsibilities of the parties by this Court.

## II. **PARTIES**

13. Plaintiff Great American is an insurance company organized under the laws of the State of Ohio with its principal place of business in Cincinnati, Ohio.

14. On information and belief, Defendant Simpson has its principal place of business at 5956 W. Las Positas Boulevard in Pleasanton, California, and is incorporated in Delaware.

15. On information and belief, Defendant Strong-Tie has its principal place of business at 5956 W. Las Positas Boulevard in Pleasanton, California, and is incorporated in Delaware.

16. On information and belief, Defendant Colonias is an individual who is resides and is a citizen of the State of California.

///

///

### III. JURISDICTION AND VENUE

17. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rules of Civil Procedure Rule 57, for the purpose of determining a question of actual controversy between Great American and the INSUREDS.

18. Jurisdiction of this action is based on 28 U.S.C. § 1332(a)(2) as there is diversity of citizenship between Great American and the INSUREDS, in that Great American is a citizen of the Ohio and the INSUREDS are citizens of California. The amount in controversy exceeds $75,000, exclusive of interest and costs, as set forth in the Underlying Lawsuit.

19. Venue for this action in the Northern District of California is proper pursuant to 28 U.S.C. § 1391(c) and (d), as the Underlying Lawsuit was pending in the Superior Court for the State of California, Alameda County.

### IV. BACKGROUND

#### A. The Hammons Demand Letter

20. On or about October 3, 2021, Hammons sent an email to Simpson demanding a "severance" for alleged "disparate, illegal and unfair treatment" and race discrimination, constituting the Hammons Demand Letter. Over the next 10 months, Simpson and Hammons exchanged numerous correspondence but were unable to agree on the amount of "severance" to be paid by Simpson to Hammons.

#### B. The Underlying Lawsuit

21. On August 2, 2022, Hammons filed the Underlying Lawsuit against the INSUREDS in which Hammons alleged race discrimination and retaliation. A true and correct copy of the Complaint from the Underlying Lawsuit is attached as **Exhibit 1** hereto and incorporated herein by reference.

#### C. The Great American Policy

22. Of relevance here, Great American issued to Simpson an ExecPro Public Solution Insurance Policy, with a **Policy Period** from July 18, 2021 to July 18, 2022, with a Limit of Liability of $10 million, and a Retention of $1 million. A true and correct copy of the Policy is attached as **Exhibit 2** hereto and incorporated herein by reference.

23. The Policy's Insuring Agreements (Section I) provides:

> **A.** The **Insurer** shall pay on behalf of the **Insured Persons** all **Loss** which the **Insured Persons** shall be legally obligated to pay as a result of a **Claim** (including an **Employment Practices Claim** or a **Securities Claim**) first made against the **Insured Persons** during the **Policy Period** or the **Discovery Period** for a **Wrongful Act**, except for any **Loss** which the **Company** actually pays as indemnification.
>
> **B.** The **Insurer** shall pay on behalf of the **Company** all **Loss** which the **Insured Persons** shall be legally obligated to pay as a result of a **Claim** (including an **Employment Practices Claim** or a **Securities Claim**) first made against the **Insured Persons** during the **Policy Period** or the **Discovery Period** for a **Wrongful Act**, but only to the extent the **Company** is required or permitted by law to indemnify the **Insured Persons**.
>
> **C.** The **Insurer** shall pay on behalf of the **Insured Entity** all **Loss** which the **Insured Entity** shall be legally obligated to pay as a result of a **Securities Claim** first made against the **Insured Entity** during the **Policy Period** or the **Discovery Period** for a **Wrongful Act**.

(Exh. 2, Policy, Exh. 2-35.)

24. The Policy defines "**Employment Practices Claim**" (Section III.F.) to mean:

> "**Employment Practices Claim**" shall mean any **Claim** brought by or on behalf of any past, present or future employee of the **Company** or **Outside Entity**, or any applicant for employment with the **Company** or **Outside Entity** alleging an **Employment Practices Wrongful Act**.

(Exh. 2, Policy, Exh. 2-37.)

25. The Policy defines "**Employment Practices Wrongful Act**" (Section III.G.) to mean:

> "**Employment Practices Wrongful Act**" shall mean any of the following acts related to employment:
>
> (1) wrongful dismissal, discharge or termination of employment, whether actual or constructive;
>
> (2) misrepresentation;
>
> (3) violation of employment laws;
>
> (4) sexual or workplace harassment;

(5) discrimination;

(6) wrongful failure to employ or promote;

(7) wrongful discipline;

(8) wrongful deprivation of career opportunity including a wrongful failure to hire or promote;

(9) failure to grant tenure;

(10) negligent employee evaluation;

(11) retaliation;

(12) failure to provide adequate workplace or employment policies or procedures;

(13) defamation (including libel and slander);

(14) invasion of privacy;

(15) wrongful demotion;

(16) negligent reassignment;

(17) violation of any federal, state or local civil rights laws;

(18) negligent hiring;

(19) negligent supervision;

(20) negligent training;

(21) negligent retention; or

(22) acts described in (1) through (21) above, arising from the use of the **Company's** internet, e-mail, telecommunication or similar systems, including the failure to provide and enforce adequate policies and procedures relating to such use of the **Company's** internet, e-mail, telecommunication or similar systems.

(Exh. 2, Policy, Exh. 2-37.)

26. The Policy defines "**Securities Claim**" (Section III.P.) to mean:

"**Securities Claim**" shall mean any **Claim** (including a civil lawsuit or criminal proceeding brought by the Securities and Exchange Commission) made against an **Insured** alleging a violation of any federal, state, local or foreign securities law, regulation, or rule, whether statutory or common law, which is:

  (1) brought by any person or entity arising out of, based upon or attributable to, in part or in whole, the: (a) purchase or sale of, or (b) offer or solicitation of an offer to purchase or sell, any securities of the **Company**, or

  (2) brought by a security holder of the **Company**, with respect to such security holder's interest in such securities of the **Company**, whether directly, by class action, or derivatively on behalf of the **Company**.

"**Securities Claim**" shall also include an administrative or regulatory proceeding alleging a violation of any federal, state, local or foreign securities law, regulation, or rule, whether statutory or common law against the **Company**, but only if and only during the time that such proceeding is also continuously maintained against an **Insured Person**.

(Exh. 2, Policy, Exh. 2-38.)

  27. The Policy defines "**Costs of Defense**" (Section III.D.) to mean:

"**Costs of Defense**" shall mean reasonable and necessary legal fees, costs and expenses incurred in the investigation or defense of any **Claim** including the costs of an appeal bond, attachment bond or similar bond (but without obligation on the part of the **Insurer** to apply for or furnish such bonds); provided, however, **Costs of Defense** shall not include salaries, wages, overhead or benefit expenses associated with any **Insured Persons**.

(Exh. 2, Policy, Exh. 2-36.)

  28. The "Costs of Defense and Settlement" section of the Policy (Section VII.A.) provides:

The **Insureds** shall not incur **Costs of Defense**, or admit liability, offer to settle, or agree to any settlement in connection with any **Claim** without the express prior written consent of the **Insurer**, which consent shall not be unreasonably withheld. The **Insureds** shall provide the **Insurer** with full cooperation and all information and particulars it may reasonably request in order to reach a decision as to such consent. Any **Loss** resulting from any admission of liability, agreement to settle, or **Costs of Defense** incurred prior to the **Insurer's** consent shall not be covered hereunder.

(Exh. 2, Policy, Exh. 2-42.)

  29. The Allocation Provision (Section VII.D.) provides:

If a **Claim** made against any **Insured** includes both covered and uncovered matters, or is made against any **Insured** and others, the **Insured** and the **Insurer** recognize there must be an allocation between insured and uninsured **Loss**. The **Insureds** and the **Insurer** shall use their best efforts to agree upon a fair and proper allocation between insured and uninsured

**Loss**.

(Exh. 2, Policy, Exh. 2-43.)

  E. **Great American Agrees to Pay the INSUREDS' Costs of Defense Related to the Hammons Demand Letter and the Underlying Lawsuit Subject to an Allocation and Reservation of Rights**

  30. On October 3, 2021, Hammons emailed the Hammons Demand Letter to Simpson. Simpson then retained two separate law firms, which incurred legal expenses prior to providing notice of the Hammons Demand Letter to Great American or obtaining Great American's prior written consent.

  31. By letter dated October 14, 2021, Simpson provided notice to Great American of the Hammons Demand Letter and enclosed a copy of the Hammons Demand Letter. In this tender, Simpson stated: "[t]he claims alleged by Mr. Hammonds constitute Employment Practices Claims as defined in the Policy."

  32. By letter dated October 27, 2021, Great American provided its coverage position to Simpson with respect to the Hammons Demand Letter, wherein Great American reserved its rights on various coverage issues, including: (1) the Hammons Demand Letter is not a "**Securities Claim**" and, therefore, Simpson has no direct coverage (*i.e.*, Insuring Agreement C.); (2) the Hammons Demand Letter included "both covered and uncovered matters" such that the Policy's Allocation Provision was implicated; (3) the untimely notice of the Hammons Demand Letter; (4) Great American provided its consent to certain attorneys at one law firm to incur legal expenses; (5) Great American did not consent to the retention of the second law firm; and (6) application of the Policy's $1 million Retention.

  33. On August 2, 2022, Hammons filed the Underlying Lawsuit.

  34. By letter dated August 19, 2022, Great American provided its coverage position to Simpson with respect to the Underlying Lawsuit, wherein Great American reserved its rights on various coverage issues, including: (1) the Hammons Demand Letter and the Underlying Lawsuit involve the "same **Wrongful Act** or **Related Wrongful Acts**" and, therefore, shall be considered a "single **Claim**" under the Policy; (2) the Hammons Demand Letter is not a

"**Securities Claim**" and, therefore, Simpson has no direct coverage (*i.e.*, Insuring Agreement C); (3) the Underlying Lawsuit is an "**Employment Practices Claim**" affording potential coverage to Colonias for the one cause of action naming her (the California Equal Pay Act ("EPA")), but "[g]iven as a matter of law, Colonias cannot be liable under the California EPA, there would be no indemnity coverage under the Policy for Colonias – and only coverage for **Costs of Defense** to get Count I dismissed against her by a Demurrer, subject to: (i) an allocation; and (ii) the Policy's $1 million Retention"; (4) the Underlying Lawsuit includes "both covered and uncovered matters" such that the Policy's Allocation Provision is implicated; and (5) Great American reserving its rights on Simpson's "offers to settle" with Hammons without Great American's prior written consent.

35. By letter dated September 7, 2022 from Simpson's coverage counsel (Jones Day) to Great American's coverage counsel (Wilson, Elser, Moskowitz, Edelman & Dicker), Simpson demanded payment of 100% of the legal expenses incurred after subtraction of the Policy's $1 million Retention.

36. By email dated September 2, 2022, Simpson's coverage counsel advised Great American's coverage counsel that Simpson had agreed to settle the Underlying Lawsuit for an amount in excess of the jurisdictional limit of this Court.

37. By letter dated September 15, 2022, Great American advised Simpson that, based on the Policy's terms, conditions, exclusions and/or endorsements, and application of the various coverage issues, including the Policy's Allocation Provision (and Great American's "good faith" allocation proposal) and the Policy's $1 million Retention, Great American had no obligation under its Policy to reimburse Simpson for any portion of the Legal Expenses and the Settlement.

## V. CAUSES OF ACTION

### COUNT I

**(Declaratory Relief: No Duty to Pay "Loss" Including "Costs of Defense"**

**Against All Defendants)**

38. Great American hereby incorporates and re-alleges the allegations in each of the foregoing paragraphs as if fully set forth herein.

39. There exists a genuine and bona fide dispute and an actual controversy and disagreement between Great American and the INSUREDS regarding whether Great American has a duty to pay any **Loss**, including the **Costs of Defense** (or the legal expenses), in connection with the Underlying Lawsuit pursuant to the terms of the Policy.

40. The INSUREDS contend that Great American has a duty to pay for any **Loss**, including 100% of the **Costs of Defense**, in connection with the Underlying Lawsuit pursuant to the terms of the Policy.

41. Great American contends it has no duty to pay for any **Loss**, including the **Costs of Defense**, in connection with the Underlying Lawsuit pursuant to the terms of the Policy.

42. In accordance with the terms, conditions, exclusions, and endorsements of the Policy, Great American has no duty to pay for any **Loss**, including the **Costs of Defense**, in connection with the Underlying Lawsuit under the Policy or applicable law, in whole or in part, for the following reasons:

   a. there is no coverage for any "**Loss**" (including **Costs of Defense**) of Simpson because the Hammons Demand Letter and Lawsuit are not a "**Securities Claim**";

   b. the Hammons Demand Letter and Lawsuit contain "both covered and uncovered matters" such that the Policy's Allocation Provision must be applied;

   c. there is no coverage for certain legal expenses incurred, because Simpson had a pre-existing legal obligation to conduct such an investigation, and it is not a "**Securities Claim**";

   d. the INSUREDS did not obtain prior written consent for the legal expenses incurred;

   e. the INSUREDS incurred pre-notice legal expenses; and

   f. the INSUREDS did not provide timely notice to Great American of the Hammons Demand Letter.

///

43. Great American also relies upon all additional terms, conditions, exclusions, and endorsements in the Policy not specifically identified herein that potentially limit or preclude coverage for the duty to pay for any **Loss**, including the **Costs of Defense**, in connection with the Hammons Demand Letter and the Underlying Lawsuit pursuant to the terms of the Policy.

44. Great American seeks a declaration from this Court that Great American has no duty to pay for any **Loss**, including the **Costs of Defense**, in connection with the Underlying Lawsuit pursuant to the terms of the Policy.

## COUNT II

**(Declaratory Relief: No Duty to Indemnify Against All Defendants)**

45. Great American hereby incorporates and re-alleges the allegations in each of the foregoing paragraphs as if fully set forth herein.

46. There exists a genuine and bona fide dispute and an actual controversy and disagreement between Great American and the INSUREDS regarding whether Great American has a duty to indemnify the INSUREDS in connection with the Settlement of the Underlying Lawsuit.

47. Upon information and belief, the INSUREDS contends that Great American has a duty to indemnify them in the Underlying Lawsuit pursuant to the terms of the Policy.

48. Great American contends it has no duty to indemnify the INSUREDS in the Underlying Lawsuit pursuant to the terms of the Policy.

49. In accordance with the terms, conditions, exclusions, and endorsements of the Policy, Great American has no duty to indemnify the INSUREDS in the Underlying Lawsuit under the Policy or applicable law, in whole or in part, for the following reasons:

    a.    there is no coverage for any "**Loss**" of Simpson, because the Hammons Demand Letter and the Underlying Lawsuit are not a "**Securities Claim**";

    b.    the Hammons Demand Letter and the Underlying Lawsuit contain "both covered and uncovered matters" such that the Policy's Allocation Provision must be applied;

    c.    Simpson did not obtain prior written consent for its "offers to settle"; and

      d.    the INSUREDS did not provide timely notice to Great American of the Hammons Demand Letter.

50. Great American also relies upon all terms, conditions, exclusions, and endorsements in the Policy not specifically identified herein that potentially limit or preclude coverage for the duty to indemnify the INSUREDS under the Policy for the Underlying Lawsuit.

51. Great American seeks a declaration from this Court that Great American has no duty to indemnify the INSUREDS in the Underlying Lawsuit pursuant to the Policy.

## PRAYER FOR RELIEF

WHEREFORE, Great American prays for judgment against the INSUREDS as follows:

1. That the Court determine, decree, and adjudge that Great American has no duty to pay for any **Loss**, including the **Costs of Defense**, in connection with the Hammons Demand Letter and the Underlying Lawsuit pursuant to the terms of the Policy;

2. That the Court determine, decree, and adjudge that Great American has no duty to indemnify the INSUREDS in the Hammons Demand Letter and Underlying Lawsuit pursuant to the Policy;

3. For attorneys' fees and costs;

4. For costs of suit incurred herein; and

5. For such other and further relief as the Court deems fit and proper under the circumstances and evidence.

Dated: October 18, 2022

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

By: /s/ Shannon L. Santos
Paul S. White
Shannon L. Santos
*Attorneys for Plaintiff Great American Insurance Company*